IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRADLEY D. SMITH,

    Plaintiff,                              No. CIV S-05-1226 DAD

    v.

MICHAEL J. ASTRUE,                    <u>ORDER</u>
Commissioner of Social Security,[1]

    Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and/or remand and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

        Plaintiff Bradley D. Smith applied for Social Security Disability Insurance benefits under Title II of the Social Security Act (Act) on January 31, 2002. (Transcript (Tr.) at 100-02.) The Commissioner denied plaintiff's application initially and on reconsideration. (Tr.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

at 75-84.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge (ALJ) on March 12, 2003. (Tr. at 22-72, 85.) Plaintiff represented himself at the hearing. (Tr. at 22-72.)

In a decision issued on May 27, 2003, the ALJ determined that plaintiff had been disabled from December 15, 1999 through August 31, 2002, but could perform a range of light work on September 1, 2002 and thereafter. (Tr. at 9-21.) The ALJ entered the following findings in this regard:

> 1. The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in any substantial gainful activity since December 15, 1999, which is his alleged onset date.
>
> 3. The medical evidence establishes that the claimant has the "severe," medically determinable impairment of degenerative disc disease of the lumbar spine, status-post fusion surgery.
>
> 4. The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 5. The undersigned finds the claimant's assertions concerning his limitations are credible for the period from December 15, 1999 through August 31, 2002 for the reasons that are set forth in the body of this decision.
>
> 6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR, § 404.1527).
>
> 7. The undersigned finds that for the period from December 15, 1999 through August 31, 2002, the claimant retained the physical residual functional capacity for performing a substantially less than sedentary exertional level of work, as set forth herein.
>
> 8. The claimant was unable to perform the requirements of his past relevant work for the entire closed period, from December 15, 1999 through August 31, 2002.
>
> 9. For the closed period from December 15, 1999 through August 31, 2002, the claimant was considered to be a "younger individual" (20 CFR, § 404.1563).

9.[2]   The claimant has more than a high school level of education (20 CFR, § 404.1564).

10.   The claimant has a skilled work background. However, given the claimant's extremely limited physical residual functional capacity for the closed period, from December 15, 1999 through August 31, 2002, the undersigned finds that the claimant did not have any skills that were transferable during that period.

11.   For the closed period, from December 15, 1999 through August 31, 2002, given the claimant's extremely limited physical residual functional capacity, the undersigned concludes that the claimant's potential occupational based was so severely eroded that he was unable to perform any jobs available in significant numbers in the national economy. This finding was made within the framework of Rules 201.28 and 201.21, but also taking into consideration 20 CFR , § 201.00(h) and Social Security Rulings (SSR's) 85-15 and 96-9p, for the entire closed period from December 15, 1999 through August 31, 2002 (20 CFR, § 404.1567).

12.   Therefore, the claimant is found to have been under a "disability" as defined in the Social Security Act for the entire closed period from December 15, 1999 through August 31, 2002 (20 CFR, § 404.1520(f)).

13.   As of September 1, 2002, the claimant's physical condition significantly improved and he is able to perform a range of light exertional level work by that date. Specifically, the claimant has the capacity for lifting and carrying up to 10 pounds occasionally and 5 pounds frequently; standing and walking for 6 hours in an 8-hour workday; and sitting for 6 hours in an 8-hour workday. Additionally, the claimant requires the flexibility to alternate between sitting and standing every thirty minutes. With regard to postural limitations, the claimant is precluded from any crawling, kneeling or climbing and he is limited to only occasionally stooping, balancing and crouching.

14.   The claimant's testimony and allegations regarding his limitations are not totally credible to the extent that he alleges an inability to work within the physical residual functional capacity found herein for the period from September 1, 2002 through the present, for the reasons that are cited in the body of this decision.

15.   From September 1, 2002 and thereafter, the claimant's impairments did not prevent him from performing his past relevant work as a Manager of a financial institution and as an Assistant Manager at a financial institution, as those jobs are generally performed. Therefore, the claimant is not disabled, as defined in

---

[2]   There are two findings numbered 9.

3

|   |   |   |
|---|---|---|
|   |   | the Social Security Act, as amended, for the period from September 1, 2002 and thereafter, pursuant to 20 CFR § 404.1520(e). |
|   | 16. | There is evidence in the records indicating that the claimant has received worker's compensation payments since the alleged onset date. |

(Tr. at 19-20.)

The Appeals Council declined review of the ALJ's decision on May 5, 2005. (Tr. at 5-7.)

Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on June 18, 2005.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, see <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  See <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Yuckert</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances two arguments in his motion for summary judgment and/or remand.  First, plaintiff asserts that the ALJ has a duty to fully develop the record but failed to fulfill that duty in plaintiff's case by not developing the record with regard to plaintiff's hip complaints.  Second, plaintiff argues that the ALJ has a duty to include all limitations, exertional as well as non-exertional, in hypothetical questions posed to a vocational expert (VE) but in

plaintiff's case the ALJ failed to include plaintiff's severe chronic pain and his need to lie down in the hypothetical question posed to the VE. The court addresses each of plaintiff's arguments below.

**I. ALJ's Alleged Failure to Develop the Record**

The Ninth Circuit has held that, rather than proceeding as a "mere umpire" at the administrative hearing, the ALJ "has an independent duty to fully develop the record, especially where the claimant is not represented." Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). In such cases, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Id. (citing Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). "When 'the heavy burden imposed by Cox' is not met, and the claimant may have been prejudiced, 'the interests of justice demand that the case be remanded.'" Id. (quoting Vidal v. Harris, 637 F.2d 710, 714-15 (9th Cir. 1981)).

Here, plaintiff argues that the ALJ failed to develop the record with regard to plaintiff's hip complaints. Citing page 49 of the hearing transcript, counsel contends that plaintiff's testimony alone was sufficient to require the ALJ to inquire into plaintiff's hip problems. Counsel acknowledges that plaintiff may not have understood the severity of his hip problem at the time of the hearing but notes that the problem became serious enough to require a total hip replacement within five months after the ALJ's decision.

Plaintiff also asserts that there was documentary evidence of his hip condition in the record at the time of the hearing: Dr. Gorek's orthopedic spine consultation dated August 14, 2002, making two references to plaintiff's hip pain (tr. at 182); Dr. Barr's back pain follow-up consultation dated April 19, 2002, noting plaintiff's complaint of a fall, description of numbness in his right leg, and report on the effect of water exercise on his hips and knees (tr. at 183); Dr. Gorek's spine surgery note dated January 26, 2001, recording that plaintiff has "a right greater than left hip arthrosis" (tr. at 212); and a chronic pain management consult dated October 10, 2000, noting "cortisone injection in right hip" (tr. at 216). In addition, plaintiff offers medical

records bearing various dates in 2003, only one of which existed and could have been obtained at the time of the administrative hearing. (Pl.'s Mot. for Summ. J., Ex. A.) Even the one medical record addressing the relevant time period, the record dated January 22, 2003, contains no apparent reference to plaintiff's hips. (Id.)

Defendant contends that the record before the ALJ was properly developed and the new evidence submitted by plaintiff is not material to the back impairment that was the focus of both the administrative hearing and the treatment records before the ALJ.

The court finds plaintiff's argument unpersuasive. Medical records demonstrate that plaintiff had hip problems at least as early as 2000, but when plaintiff filed his application for disability benefits on January 31, 2002, he alleged disability beginning December 15, 1999 due to back problems following back surgery. (Tr. at 12-13.) Plaintiff had reviewed the file before the hearing and, when asked whether the record contained all the documents needed to adjudicate his claim, answered in the affirmative. (Tr. at 25.) After the ALJ asked plaintiff about the onset of his disability, plaintiff talked about the pain in his back. (Tr. at 26.) Plaintiff also mentioned his left knee (tr. at 31) and his right leg (tr. at 42), but the focus of his testimony was his back pain (tr. at 47-48). Plaintiff made a passing reference to his hips in the context of a consultation with a neurologist concerning back surgery. (Tr. at 49.) Dr. Eno told plaintiff that he had "seen worse backs" and then showed him an x-ray that he said was plaintiff's left hip:

> And said well, you have arthritis in your left hip. I said, no, if I have arthritis it's in my right hip, because I can't lift my leg up . . . for that. He turned the x-ray around and goes, oh, you're right. Then I said to him, you know, all I really want to do is try to get out of enough pain so that I can go back to work.

(Tr. at 49.) Plaintiff continued with his account of his efforts to arrange for surgery on his back, and then the focus shifted to the vocational expert. (Tr. at 50-52.) Plaintiff made no other reference to his hip condition.

After reviewing the record and considering plaintiff's arguments, the undersigned finds that plaintiff did not allege or testify that he was disabled, even in part, due to hip problems.

The ALJ had no duty to develop the record about a medical issue that was not presented as a disabling impairment. In light of plaintiff's indication that the record contained all the necessary records and the ALJ's conclusion that plaintiff's period of disability ended on August 31, 2002, the undersigned finds that the ALJ did not err in taking no steps to obtain medical records beyond October 25, 2002.

For all of reasons stated above, the ALJ did not fail to fulfill his duty to fully develop the record.

**II.  ALJ's Alleged Failure to Include All Limitations in the Hypothetical**

At step five of the sequential evaluation, the ALJ is required to question a vocational expert in a manner that properly takes into account the limitations on the plaintiff's abilities to engage in various work-related functions. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001). "While the ALJ need not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).

Plaintiff argues that the ALJ has a duty to include all limitations, exertional as well as non-exertional, in the hypothetical question for the vocational expert and that the ALJ erred in this case when he failed to include plaintiff's severe chronic pain and need to lie down periodically in the hypothetical. Defendant contends that the ALJ is required to incorporate in the hypothetical only those limitations that are supported by substantial evidence. Defendant argues that the ALJ credited some of plaintiff's complaints and elements of Dr. Barr's opinion concerning plaintiff's limitations by incorporating in his residual functional capacity finding and in his hypothetical a sit/stand option every 30 minutes. Defendant further argues that the ALJ properly supported his rejection of plaintiff's alleged need to lie down for the remainder of the day after sitting for a period.

/////

The court finds that the hypothetical posed by the ALJ incorporated plaintiff's severe chronic pain by including restrictions on various activities, postural limitations, and a requirement that plaintiff have the flexibility of alternating sitting with standing every 30 minutes.  The record reflects that the ALJ did not incorporate a requirement that plaintiff be able to lie down periodically because: (1) the objective evidence did not support such a limitation; and (2) the subjective evidence supporting such a limitation was contradicted by plaintiff's decision not to pursue the chronic pain program to which he was referred by one of his doctors as well as by plaintiff's admission that by February 12, 2003, he was capable of walking to the store and taking short walks for exercise.  Plaintiff was an active participant in the discussion regarding the hypothetical question and did not suggest that the hypothetical include the limitation of time for him to lie down.  (Tr. at 55-70).

For all the reasons set forth above, the court rejects plaintiff's argument that the ALJ erred by failing to include all of plaintiff's impairments in the hypothetical question posed to the vocational expert.

## CONCLUSION

Accordingly, the court HEREBY ORDERS that:

1. Plaintiff's motion for summary judgment and/or for remand is denied;

2. Defendant's cross-motion for summary judgment is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: March 8, 2007.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/smith1226.ord